HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TRACEY ANN FREEMAN,

    Plaintiff,

    v.

CITY OF SEATTLE, et al.,

    Defendants.

CASE NO. C07-0904RAJ

ORDER

## I. INTRODUCTION

This matter comes before the court on Defendants' second motion for partial summary judgment (Dkt. # 34) and Plaintiff's motion for partial summary judgment (Dkt. # 36). Neither party has requested oral argument on either motion, and the court finds the motions suitable for disposition on the basis of the parties' briefing and supporting evidence. For the reasons explained below, the court GRANTS Defendants' motion and DENIES Plaintiff's motion.

ORDER – 1

## II. BACKGROUND

On May 6, 2004, Seattle Police Department ("SPD") Officer Lauren Truscott[1] was on South Wabash Street in Seattle pursuant to her duties as an officer of the Community Policing Team, finalizing plans to improve lighting and security in the wooded area around a bus stop. Plaintiff Tracey Freeman owns a fast-food trailer on that street, and Officer Truscott asked her to reduce the volume of the portable radio she kept outside her trailer to attract customers. Freeman agreed to reduce the volume.

Less than two weeks later, on May 18, 2004, Officer Truscott parked her patrol car near Freeman's trailer as she responded to back up another officer's traffic stop. Officer Truscott testified in a deposition that the trailer's radio was playing so loudly that she could not hear her police radio. *See* Garcia Decl. (Dkt. # 35), Ex. A at 60:20-23. After Officer Truscott observed that the traffic stop was under control, she walked over to the radio and turned it off. She then approached the window of the trailer to explain why she had turned off the radio.

As Freeman saw Officer Truscott approaching, Freeman ordered the officer to leave the property. Officer Truscott instructed Freeman that because she had a business license, police officers were authorized to enter the property. The officer also explained why she had turned off the radio, and stated that Freeman would be cited for violating a City noise ordinance.[2] Officer Truscott returned to her car to write the citation, and while she was away from the trailer, Freeman turned the radio on again.

---

[1] Since the inception of this case, Officer Truscott married and changed her last name to Givens. This order refers to Officer Truscott by her former name for the sake of consistency with the majority of the documents in the record.

[2] It is undisputed that at the time of the arrest, Officer Truscott was unaware that the Seattle Municipal Code ("SMC") provision under which Freeman was cited contains an exception for those operating portable audio equipment on premises that they own. *See* Carrington Decl. (Dkt. # 41), Ex. A at 89:18-91:11; SMC 25.08.515(B). The Defendants allege that Freeman could also have been cited under SMC 25.08.500 (prohibiting a refusal to cease "unreasonable noise" when asked by a police officer) or SMC 6.100.030 (prohibiting the use of a "mechanical music machine" at a volume louder than necessary). *See* Defs.' Opp'n (Dkt. # 46) at 7-8.

ORDER – 2

When Officer Truscott returned to the trailer, Freeman was talking on the telephone, attempting to complain to the police department about Officer Truscott. Officer Truscott asked Freeman to end her phone conversation and to provide identification so that she could complete the citation form. Freeman refused to hang up the phone, and Officer Truscott then told Freeman that she was under arrest for obstructing. At that point, the officer claims she grabbed Freeman's hand, and Freeman claims that she pushed her against a refrigerator. *Compare* Carrington Decl. (Dkt. # 36), Ex. A at 82:18, *with* Garcia Decl. (Dkt. # 35), Ex. A at 99:14-15. Freeman stepped back and told the officer not to touch her. Officer Truscott asked Freeman to cooperate, and Freeman then put her hands behind her back and was taken into custody.

Freeman's arrest was screened by SPD Sergeant Rodney Strozier, who cleared the arrest based on Officer Truscott's description of the incident. *See* Carrington Decl. (Dkt. # 36-2), Ex. B at 48:1-7. At the time Sergeant Strozier screened the arrest, he was unaware that the noise ordinance under which Officer Truscott cited Freeman contained an exception for those operating portable audio equipment on premises that they own. *See id.*, Ex. B at 63:19-64:13. The obstruction and resisting charges against Freeman were ultimately dismissed pretrial. *See* Carrington Decl. (Dkt. # 40), Ex. 1.

Almost two years after the arrest, on March 22, 2006, Freeman filed a lawsuit against the City of Seattle ("the City") and six individual police officers based on the arrest, but that suit was dismissed on November 29, 2006, for failure to prosecute. *See* Docket Sheet (Dkt. # 2 at 75-76). Freeman filed the instant lawsuit in King County Superior Court on May 14, 2007, and Defendant City of Seattle ("the City") removed the case to federal court. *See* Notice of Removal (Dkt. # 1). Freeman voluntarily dismissed her claims against four of the individual officers, *see* Notice of Voluntary Dismissal (Dkt. # 28), and the court previously dismissed Freeman's claims against Officer Truscott due to lack of timely service. *See* Order (Dkt. # 58). Therefore, the City is the sole

ORDER – 3

Defendant remaining in this case, and it has moved for summary judgment against all of Freeman's claims against it.

## III. ANALYSIS

### A. Standard of Review on Summary Judgment.

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

### B. Freeman's Fourth Amendment Claims Fail Because No *Respondeat Superior* Liability Arises Under Section 1983, and Because Freeman has Presented No Evidence of a Policy that Caused the Alleged Constitutional Deprivations.

Freeman's complaint asserts an excessive force claim against the City. This claim invokes the Fourth Amendment.[3] *See Graham v. Connor*, 490 U.S. 386, 394 (1989). Police officers are required under the Fourth Amendment to use only reasonable force, and a court determines whether particular force was reasonable by asking "whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397.

Freeman's complaint does not specifically raise a claim of false arrest under the Fourth Amendment, but does mention that Freeman was arrested even though she was "not guilty of <u>any crime</u>." *See* Complaint ¶ 16 (emphasis in original). The Fourth Amendment also requires protects a suspect from warrantless arrest unless there is probable cause for a police officer to believe that an offense has been or is being committed. *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). The court liberally

---

[3] Freeman's complaint also uses the phrase "due process" in claiming that the Defendants deprived her of constitutional rights. *See* Complaint ¶ 14. The parties agree that because Freeman has raised a Fourth Amendment claim, the court should apply the more specific Fourth Amendment analysis instead of addressing a duplicative Due Process claim. *See* Defs.' Mot. at 8; Pltf.'s Opp'n at 10 n.1.

ORDER – 4

construes Freeman's complaint to raise a federal false arrest claim under the Fourth Amendment.

42 U.S.C. § 1983 creates a remedy for violations of Fourth Amendment and other federal rights by defendants who act under color of state law. *Motley v. Parks*, 432 F.3d 1072, 1077 (9th Cir. 2005). Freeman's Fourth Amendment claims against the City are specifically brought under a *respondeat superior* theory. *See* Complaint ¶ ¶ 12, 16. A municipality cannot be held liable under Section 1983 solely on a *respondeat superior* theory. *See Monell v. Dep't of Social Services*, 436 U.S. 658, 691 (1978). Thus, to the extent that Freeman's Section 1983 claims against the City are based on *respondeat superior* liability, they fail as a matter of law.

But a municipality can be liable under Section 1983 if it has an official policy or pervasive custom that causes a violation of a plaintiff's federal civil rights. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). There are four elements of a *Monell* claim: (1) the plaintiff's federally protected right was violated; (2) the municipality had a policy or custom; (3) the policy or custom amounts to deliberate indifference to the plaintiff's right; (4) the policy or custom is the moving force behind the violation. *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996). To the extent that Freeman also claims that the City is liable under Section 1983 for excessive force or false arrest based on its policy of improperly training Officer Truscott, *see* Complaint ¶ 12, this claim also fails because Freeman has presented no evidence that the City has such a policy, let alone that it amounts to deliberate indifference to her rights or that it was the moving force behind the alleged violation.

Freeman claims that the City "has a policy or custom of not properly investigating and responding to citizens' complaints of civil rights violations." Pltf.'s Opp'n at 13. She claims that this policy or custom is evidenced in a draft report on the 2007 arrest of

ORDER – 5

James Patterson from the Seattle Police Department's Office of Professional Accountability Review Board:

> The same allegations of police misconduct that compelled prosecutors to dismiss criminal charges against Mr. Patterson and issue Brady notices in related matters have been publicly sanctioned by the Chief of Police. The Chief further appears to ignore evidence uncovered by OPA indicating broader, at best perfunctory compliance with arrest screening procedures.

Carrington Decl. (Dkt. # 41), Ex. H at 2. Freeman also presents a 2008 newspaper article stating that SPD officers are more likely to arrest a black person than a white person for obstructing. *See id.*, Ex. I.

Ignoring the hearsay problems with these documents, neither the 2007 report nor the 2008 newspaper article are relevant to establishing that at the time of Freeman's 2004 arrest, the City had a policy or custom of improperly screening arrests, failing to investigate complaints, or failing to train officers. Though Freeman's opposition accuses the City's policies of encouraging police misconduct, these accusations are merely speculative. *See, e.g.*, Pltf.'s Opp'n at 13 ("Chief Kerlikowske has publicly given Seattle Police Department officers the go-ahead to violate citizens' rights without fear of punishment."); *id.* at 14 ("Officer [Truscott] knew that in any investigation into violations of Ms. Freeman's rights, that her word would be taken over that of Ms. Freeman."). Freeman has presented evidence that the City has a policy of screening arrests to ensure their propriety, but has presented no evidence that the City had a policy or custom of approving arrests that are not supported by probable cause or where excessive force is used. In the absence any evidence of any City policy at the time of Freeman's arrest or how it caused Freeman's specific alleged constitutional deprivations, her Fourth Amendment claims must fail as a matter of law.

ORDER – 6

### C. Because Freeman was Never Convicted or Sentenced After her Arrest, This Incident Does not Give Rise to an Eighth Amendment Claim.

Freeman's complaint raises an Eighth Amendment claim of "cruel and unusual punishment." *See* Complaint ¶ 12. The Eighth Amendment's prohibition on cruel and unusual punishment "applies only 'after conviction and sentence.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001) (quoting *Graham v. Connor*, 490 U.S. 386, 393 & n.6 (1989)). The Cruel and Unusual Punishment Clause does not give rise to a claim by a pretrial detainees based on the type or amount of punishment inflicted. *See Jones v. City of Los Angeles*, 444 F.3d 1118, 1128 (9th Cir. 2006).

Even though Freeman acknowledges that she was not convicted or sentenced in this case, *see* Pltf.'s Opp'n at 21, she argues that *Jones* supports the viability of her Eighth Amendment claim despite her status as a pretrial detainee. It is true that the *Jones* court holds that a certain type of Eighth Amendment claim can be raised by a pretrial detainee: a claim challenging a criminal statute "alleged to transgress the [Cruel and Unusual Punishment Clause's] substantive limits on criminalization." *Jones*, 444 F.3d at 1129. Freeman has not challenged a criminal statute under the Eighth Amendment, but instead attempted to use the Eighth Amendment as a vehicle to claim that excessive force was used in effectuating her arrest. The Eighth Amendment does not give rise to such a claim, and therefore Freeman's claim of cruel and unusual punishment fails as a matter of law.

### D. Freeman's Equal Protection Claim Fails as a Matter of Law Because it is Not Supported by Evidence of the City's Discriminatory Intent or Motive.

Freeman's complaint claims that the City deprived her of the right to equal protection. *See* Complaint ¶ 14. The Fourteenth Amendment's Equal Protection Clause provides that "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." An equal protection claim requires proof of discriminatory intent or motive. *See Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279-80 (1979);

ORDER – 7

*Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 270-71 (1977); *Washington v. Davis*, 426 U.S. 229, 242 (1976); *Geduldia v. Aiello*, 417 U.S. 484, 496-97 & n. 20 (1974).

Freeman has offered no evidence that the City acted with any discriminatory intent or motive. The court also notes that Freeman's response brief does not oppose the City's argument that this claim should be dismissed for this reason. Because Freeman has failed to offer any evidence to support her equal protection claim, this claim must fail.

### E. Freeman's Malicious Prosecution Claim Fails Because She has Presented No Evidence of Malice on the Part of the City.

Freeman's complaint alleges a federal malicious prosecution claim against the City. *See* Complaint ¶ 16. Though malicious prosecution is generally not cognizable under Section 1983 if there is a state remedy available, an exception exists for malicious prosecutions intended to subject a person to a denial of constitutional rights. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561-62 (9th Cir. 1987). Malice on the part of the defendant in instituting or continuing a prosecution is one of the essential elements of a Washington malicious prosecution claim. *See Bender v. Seattle*, 99 Wn.2d 582, 593 (1983).

Freeman claims that the facts alleged support an inference of malice on the part of the City, because Freeman's "constitutional deprivation is due to (City) policy, [it] was not random and unauthorized." Pltf.'s Opp'n at 20. But as discussed *supra*, Section III.B, Freeman has failed to put forward any evidence of the City's official policy or widespread custom of intentionally violating the constitutional rights of arrestees. Without such evidence, the court has no basis to infer malice on the part of the City. Freeman's malicious prosecution claim fails as a matter of law.

ORDER – 8

### F. Freeman's Negligent Training/Supervision Claims Fail Under the Public Duty Doctrine.

Freeman's complaint alleges a "professional negligence" claim against the City, and, in another section, alleges that the City failed to properly train Officer Truscott. *See* Complaint ¶¶ 12, 18. Though the complaint is not entirely clear on the nature of this claim, the court reads these two allegations together to form a state law claim for negligent training/supervision.

The City maintains a police force for the benefit of the public at large. *See* Seattle City Charter, art. VI, sec. 5 ("The Chief of Police shall maintain the peace and quiet of the City."). The City's duty to train or supervise its officers is therefore a duty undertaken for the benefit of the public as a whole. Negligence claims based on the breach of a duty owed to the public are not permitted:

> The threshold determination in a negligence action is whether a duty of care is owed by the defendant to the plaintiff. Whether the defendant is a governmental entity or a private person, to be actionable, the duty must be one owed to the injured plaintiff, and not one owed to the public in general. This basic principle of law is expressed in the "public duty doctrine."

*Babcock v. Mason County Fire Dist. No. 6*, 144 Wn.2d 774, 784-85 (2001). There is an exception to the public duty doctrine for special relationships, which applies if:

> (1) there is direct contact or privity between the public official and the injured plaintiff which sets the latter apart from the general public, and (2) there are express assurances given by a public official, which (3) give[] rise to justifiable reliance on the part of the plaintiff.

*Taylor v. Stevens County*, 111 Wn.2d 159, 166 (1988).

Freeman claims that special-relationship exception to the public duty doctrine applies here, due to Officer Truscott's direct contact with Freeman on May 6, 2004, days before the arrest. It is undisputed that on May 6, a police officer asked Freeman to turn

ORDER – 9

down the volume on her radio and that Freeman complied.[4] Without analysis of these facts, Freeman claims that "Officer [Truscott's] prior meeting with [Freeman] created a special relationship." Pltf.'s Opp'n at 24. Freeman has established that she had prior contact with Officer Truscott, but has not provided any facts showing that Officer Truscott made any express assurance to her that she justifiably relied upon. Freeman has not alleged that Officer Truscott told her that she would not be cited in the future if she kept her radio volume at a certain level, or that she even mentioned the noise ordinance or the possibility of citation at all on May 6. Because Freeman has presented no evidence that a special relationship was formed between Officer Truscott and Freeman on May 6, the exception does not apply and Freeman's negligence claim is barred by the public duty doctrine.

**G.     Any Intentional Tort Claims are Time-Barred.**

In a section titled "State Tort Law Violations," Freeman alleges that the Defendants' actions, or failures to act despite having clear authority to do so, constitutes a breach of its duties to Plaintiff. *See* Complaint ¶ 18. The complaint does not list specific torts. In Washington, the statute of limitations for intentional torts is two years. *See* RCW 4.16.100. This lawsuit was filed just short of three years after the incident giving rise to the tort claims. To the extent that Freeman's complaint raises any claims for intentional torts, they are time-barred and must be dismissed.

---

[4] Freeman claims that an officer (not Officer Truscott) told her to reduce the volume to a specific setting on the radio, while Officer Truscott testified in a deposition that she generally requested that Freeman turn the music to a lower volume. *Compare* Carrington Decl. (Dkt. # 35-2), Ex. A at 30:15-18, *with id.*, Ex. B at 20:1-25. Even assuming that Freeman's version of the conversation is true, that conversation did not include any express assurances that Freeman could have relied upon.

ORDER – 10

## IV. CONCLUSION

The court GRANTS Defendants' second motion for partial summary judgment (Dkt. # 34) and DENIES Plaintiff's motion for partial summary judgment (Dkt. # 36).[5]

DATED this 17th day of October, 2008.

*Richard A. Jones* (signature)

The Honorable Richard A. Jones
United States District Judge

---

[5] The Defendants moved to strike the portions of Freeman's opposition papers that do not comply with the local rules. *See* Defs.' Reply (Dkt. # 44). Local Rules W.D. Wash. CR 7(e) limits response briefs to 24 pages, and CR 10(e)(1) requires that all printed material use type no smaller than 12-point font. Freeman's opposition is 26 pages long and uses a type smaller than 12-point font. Given its strong preference for considering the merits of a motion, the court DENIES Defendants' motion to strike, but instructs Freeman's counsel to comply with the local rules governing brief length and format in the future.

ORDER – 11